The Indiana, Illinois & Iowa Railroad Company v. Fred-
erick O. Swannell, Frederick A. Swannell, Execu-
tors of the Last Will and Testament of William
G. Swannell, Deceased, John C. Cushman,
Joel D. Harvey, Samuel W. Strong, Pat-
rick Dore and Henry M. Hooker.

1. TRUSTEE — *Duty of One Self-Constituted.* — A self-constituted
trustee is bound to the observances of frankness, sincerity and good faith
toward the principal whose affairs he volunteers to take in charge. He
acquires no right of property by means of such interference, and is bound
not only to the exercise of good faith, but of ordinary diligence.

2. Same—*Cestui Que Trust as Owner of the Property.*—Courts treat the *cestui que trust* of property as its true owner; hence, it is as a rule necessary in a court of equity for those who claim to have purchased from a trustee, property which to their knowledge was held in trust, to show that the purchase money was applied to the use of the *cestui que trust.*

3. Vendor and Vendee—*Purchaser of Property Can Not Shut His Eyes.*—A party in purchasing property can not shut his eyes to that which is easily to be seen if he will but look. He can not claim the benefit of ignorance when the opportunity for knowledge was before him.

Memorandum.—Bill to foreclose trust deed.  Appeal from the Circuit Court of Cook County; the Hon. Murray F. Tuley, Judge, presiding. Heard in this court at the March term, 1894, and reversed and remanded with directions.  Opinion filed July 2, 1894.

The opinion states the case.

Walker & Eddy, attorneys for the appellant, the Indiana, Illinois & Iowa Railroad Company.

Thomas P. Bonfield and George W. Cass, attorneys for appellees Frederick O. Swannell and Frederick A. Swannell.

Thomas P. Bonfield and G. Frank White, attorneys for appellees Samuel W. Strong and Henry M. Hooker.

Dent & Whitman, attorneys for appellee Patrick Dore.

Mr. Justice Waterman delivered the opinion of the Court.

The Kankakee & Pacific R. R. Co., being a corporation originally created by and under the laws of the State of Indiana, with power to locate and operate a road from Plymouth, in the State of Indiana, westerly to the boundary line of the State of Illinois, was consolidated with a company organized under the laws of the State of Illinois, the name of the consolidated company being the Plymouth, Kankakee & Pacific R. R. Co., with a capital stock of $2,500,000. Said railroad company proceeded to procure a right of way, and partially completed its railroad, and made

large outlays of money for the purchase of material and payment of labor.

On the first day of June, 1871, the Plymouth, Kankakee & Pacific Railroad Company executed 3,600 bonds, each for the sum of $1,000, due in thirty years, and to secure the same, executed a trust deed conveying all and singular its line of railroad and all its property in trust to J. Edgar Thomson and George W. Cass, of the State of Pennsylvania; 398 of said bonds were negotiated and sold to various parties.

Thereafter, default in the payment of interest having been made, Samuel T. Hanna and several other bondholders filed a bill on the 25th day of July, 1874, in the U. S. Circuit Court for the Northern District of Illinois, for the purpose of foreclosing the said trust deed.

On the 4th day of August, 1876, a decree was entered in said cause, which decree provided among other things that said railroad company should pay the amount found due on said bonds, and that in default of such payment the property described in the said trust deed should be sold by the master in chancery of said court, and the proceeds of such sale applied to the payment of the bonds and coupons described in said decree.

Thereupon the property covered by said trust deed was, in pursuance of such decree, on the 12th day of June, 1877, offered for sale by Henry W. Bishop, a master in chancery of said court. The report of the sale of the master, filed June 10, 1878, containing the following statement:

"At which sale Mr. John C. Cushman, trustee for bondholders, bid the sum of $4,000, that sum being the highest sum bid for the same, and he being the highest bidder, and I further report that said bid has not yet been complied with, and respectfully ask of the court further directions herein."

Prior to the property being offered for sale, a portion of the holders of said bonds had made an arrangement under which said John C. Cushman was to bid in the property for the use and benefit of such of the bondholders as might come in and become parties to such arrangement. Such

arrangement contemplated a reorganization, the issuance of new bonds to the old bondholders and the payment of a small sum upon each of the bonds to defray the necessary expenses attending upon such arrangement.

No further proceedings were had in said cause until February, 1881, at which time the said Cushman and one Joel D. Harvey filed in said United States Circuit Court their petition asking that said Cushman be allowed to complete his bid and receive a deed for said property, and on the 3d day of May, 1881, the said Circuit Court confirmed said sale to said Cushman and ordered the said master to execute and deliver a deed to him of said property, and a deed thereof was on the same day in pursuance of said order executed and delivered to said Cushman.

On the 11th day of July, 1881, said Cushman conveyed said property to appellant, the Indiana, Illinois & Iowa Railroad Company.

A few days prior to this conveyance Cushman made a deed to the trustees, respectively, of the Indiana, Illinois & Iowa Railroad Company, as he, Cushman, describes it, one set for the Indiana portion and one for the Illinois portion.

Cushman seems to have made two or three deeds for the benefit of this railroad. Each time that he so conveyed he took from Harvey, who had become the owner of the greater portion of the bonds for which the foreclosure was had, an indemnifying bond, which, among other things, provided that said Harvey should hold Cushman harmless against all loss, costs, damage and expenses to which said bondholders or any other person might seek to subject him, Cushman, by reason of such conveyance; and to pay all judgments, costs and expenses that might be awarded or rendered against him, Cushman, in any court of final or general jurisdiction in any suit or proceeding growing out of such conveyance, or of his trusteeship for the holder of any bond of the Plymouth, Kankakee & Pacific Railroad Company.

In consideration of the conveyance to the Indiana, Illinois & Iowa Railroad Company, Harvey received, according to his testimony, about $150,000 of the stock of a company known as the Western Air Line Construction Company.

Under an order of reference made by the court in the case at bar, the master found that the new bonds which the respective bondholders were to receive by the terms of the reorganization contemplated by the arrangement under which said Cushman made his bid at the master's sale, would, if they had been issued, be worth thirty-three cents on the dollar, or, in other words, that if the plan of reorganization had been carried out the bondholders of the Plymouth, Kankakee & Pacific Railroad Company would have received for the bonds which they held, other bonds of the same amount and now actually worth thirty-three cents on the dollar.

The bill filed in the case at bar charges that subsequent to the entry of said decree in the U. S. Circuit Court, and before the confirmation of the sale, said Harvey purchased a large number of said bonds for a nominal sum, and that Cushman and Harvey conspired together to obtain the property, and to defraud Frederick O. Swannell, who filed the bill in the case at bar as a holder of some of the bonds secured by said trust deed, and also to defraud other holders of said bonds of their proportion in the said property mortgaged as aforesaid.

The bill charged that at the time Cushman conveyed the property as aforesaid, it was of sufficient value to pay the bonds of Swannell and the other bondholders in full, but that complainant never received anything from the proceeds of said sale. The suit at bar was brought by Swannell, on behalf of himself and other holders of the bonds similarly situated, who might desire to become parties and share the benefits of the suit. The prayer of the bill was that the title acquired by Cushman shall be declared to be in trust for all the bondholders, and that the conveyance from Cushman to the I., I. & I. Railroad Company shall be charged with the same trusts, and to be held in trust for Swannell and the said other bondholders, and that the said railroad company shall be decreed to deliver new bonds in equal amounts, according to the plan of reorganization. And the bill contained also, a prayer for general relief.

During the progress of the case at bar, various intervening petitions were filed. These, together with the original bill, were referred to a master, to take testimony and report. The master reported in favor of the bill filed by Frederick O. Swannell and Frederick A. Swannell, executors of the last will and testament of William G. Swannell, deceased, and a decree in their favor was entered.

In the matter of the intervening petition of Henry M. Hooker, it appears from the testimony taken by the master, that for the purpose of defraying the expense contemplated by the arrangement among certain bondholders, under which the said John C. Cushman made his bid at the master's sale, various assessments or calls were made upon the several bondholders, some of whom paid such calls and others did not; that among the bondholders at that time was the Third National Bank, of Chicago; that when the assessments and calls for contribution were made, said bank not having paid the same, received back its bonds from John C. Cushman, accompanied by a letter in which he stated that he considered himself absolved from any liability to said Third National Bank by virtue of said trusteeship, on the ground of the failure of said bank to make the contribution provided for, and also stating that he thereby surrendered all his authority to represent the said bonds held by said bank, and requested it to return to him his receipt, dated January 27, 1877, given for said bonds; that since said date no action has been taken thereunder by said Third National Bank, or by said Henry M. Hooker, whose petition is based upon his ownership of the bonds formerly held by said Third National Bank and surrendered to it by said Cushman as aforesaid. Nor did the evidence disclose that any offer had ever been made by said Third National Bank or said Hooker, to pay his share or portion in the expenses incurred in said foreclosure suit, of the amount of the purchase money paid by said trustee upon said sale. And the master, to whom the petition of said Hooker was referred, in his report against the allowance of the petition of said Hooker, includes as one of the reasons for disallowing his petition, that there is not

in it any offer made to contribute his share of expenses, but the only offer made by him is to pay his share and proportion of the amount of costs of the suit of Swannell against Cushman.

The intervening petition of Samuel Strong was also referred to the master, and testimony taken upon it. In such testimony it appears that in a letter dated November 23, 1880, said Strong wrote to said Cushman as follows:

"You will please deliver to L. G. Pearre, Esq., on presentation of this order, which shall be your receipt in full and a complete discharge from all liability, three first mortgage bonds of the Plymouth, Kankakee & Pacific Railroad Company, being numbers 426, 427 and 366, for $1,000 each, and coupons thereto attached, together with the power of attorney authorizing you to act as trustee to represent said bonds." Also acknowledging receipt of $12, amount of last assessment. And that thereupon said Cushman returned said bonds and receipt to said Strong.

In the matter of the intervening petition of Patrick Dore, upon reference to the master it appears in evidence that July 9, 1881, Mr. Dore gave to said Cushman the following release:

"CHICAGO, ILL., July 9, 1881.

I have this day received from John C. Cushman seven first mortgage bonds of the Plymouth, Kankakee & Pacific Railroad Company, numbered 440, 441, 443, 444, 445, 448 and 449, with interest coupons thereto attached, numbered from 6 to 60 inclusive. And I hereby release said Cushman from all further duty or liability in connection therewith, as my attorney or representative, and agree to hold him harmless therein, and waive all rights that I may have attained through or by him."

The master reported against the allowance of the relief respectively asked by Hooker, Strong and Dore. Upon exceptions filed, the report of the master in the case of Patrick Dore was overruled by the court.

The first decree of the court rendered upon the bill filed by the executors of Swannell was that the Indiana, Illinois

& Iowa Railroad Company should deliver to Swannell new bonds in accordance with the contemplated plan of reorganization under which Cushman bid, or in default thereof, should pay to said. executors the value of said bonds in money. It afterward appearing that the said Indiana, Illinois & Iowa Railroad Company had failed to deliver to the executors of said Swannell the bonds as required by the former decree, the court ordered that the said railroad pay to the executors of Swannell, and the court also ordered that the said railroad pay to the said Dore the value of the bonds by the said executors and the said Dore respectively held, as found by the court, and that the petitions of Strong and Hooker be dismissed for the reasons set forth in the master's report.

As to the decree of the Circuit Court in this cause, the Indiana, Illinois & Iowa Railroad Company make no objections to the form of the proceedings had in the Circuit Court, or of a technical nature, but insist that upon the merits and in accordance with the case of Cushman v. Bonfield, reported in 139 Ill. 219, no decree whatever should have been rendered against it.

Messrs. Hooker and Strong insist that upon the merits the decree of the Circuit Court dismissing their petitions was wrong, and that they are entitled to relief of the same nature as that allowed to the executors of Swannell and to Patrick Dore.

As is said in the case of Cushman et al. v. Bonfield, 139 Ill. 219, "No question is or can be made, that, under the arrangement in pursuance of which Cushman became the purchaser at the foreclosure sale, of the property, rights and franchises of the Plymouth, Kankakee & Pacific Railroad Company, he became charged with the trust in favor of Bonfield, and the other bondholders who placed their bonds in his hands, and that he bid off said property, rights and franchises as their trustee. Nor would there seem to be any doubt that said trust relation continued up to the time the sale was confirmed and the master's deed executed to Cushman, or up to the time of the conveyances by which

said railroad property became vested in the Indiana, Illinois & Iowa Railroad Company."

It is equally clear that the master's report declaring as it did that the sale was to Mr. John C. Cushman, trustee for bondholders, the Indiana, Illinois & Iowa Railroad Company, taking title as it did from Cushman under such sale, is charged with notice of the trust, and it is immaterial whether the bondholders did or did not comply with the terms of the arrangement under which Cushman purchased as a trustee for them. As appears there was no sale of the property by the master, except to John C. Cushman in trust for bondholders.

If all or any of the bondholders failed to comply with the arrangement under which said Cushman so purchased in trust, the sale might have been set aside and a new sale ordered free from any trust; but Cushman having taken the title in trust could not, without the consent of those for whom he was a trustee, rid himself of the relation which he occupied to them. Moreover, the amount paid by said Cushman for the property, was most inadequate. So that the Indiana, Illinois & Iowa Railroad Company must from that circumstance, as well as the master's report, have known that the bondholders for whose benefit the foreclosure proceedings were had and the sale made, were entitled to the benefit of whatever Cushman, as such trustee, might obtain for the property.

The circumstances of the bid by sale and conveyance to Cushman were such that he thereby became a trustee for all the bondholders; as to those who came into the proposed arrangement he was by mutual arrangement a trustee, while as to those with whom no understanding was had, or an agreement made, he was a self-constituted trustee. A self-constituted trustee is bound to the observance of frankness, sincerity and good faith toward the principal whose affairs he volunteers to look after or takes in charge. He acquires no right of property by means of such interference, and is bound not only to the exercise of good faith, but of ordinary diligence. Carey v. Carey, 14 Ill. 112, 117.

Courts of equity treat the *cestuis que trust* of trust property as its true owners; hence it is, as a rule, necessary in a court of equity for those who claim to have purchased from a trustee, property which to their knowledge was held in trust, to show that the purchase money is applied to the use of the *cestuis que trust*. Perry on Trusts, Sec. 790; Hill on Trusts and Trustees, 509.

In the present case the purchase price not only was not applied to the use of the true owners of the trust property, but the sale by the trustee, being for stock of a construction company, was a mere attempted exchange of one kind of property for another.

A party in purchasing property can not shut his eyes to that which is easily to be seen if he will but look; he can not claim the benefit of ignorance when the opportunity for knowledge was before him. C., R. I. & P. R. R. Co. v. Kennedy, 70 Ill. 350.

The Indiana, Illinois & Iowa Railroad Company could, by the slightest examination, have ascertained in what way Cushman had purchased their property.

The arrangement under which Cushman made the bid of $4,000 at the master's sale was an agreement entered into between him and one Oliver W. Barnes, of the city of New York, acting in behalf of the bondholders, and so is spoken of as the Barnes contract. In the case of Bonfield v. Cushman, 139 Ill. 219, in which case the rights of bondholders, growing out of said arrangement and purchase by Cushman, were under consideration, the Supreme Court, after setting forth how such an arrangement tended to prevent all competitive bidding at such sale, goes on to say:

" Cushman's purchase having been made under these circumstances, it seems too plain for argument that he held whatever rights he thus obtained in trust for all the bondholders, or, at least, in trust for those who accepted and became parties to the arrangement under which the sale took place. And it seems equally clear that the trust thus created was impressed upon and followed the title which was subsequently perfected in Cushman by the execution of the

master's deed in pursuance of said sale. The failure of the scheme embodied in the Barnes contract did not divest or extinguish said trust, as such failure in no way restored the bondholders to the position in which they stood before the sale. It gave them no opportunity or right to have the property re-sold, so as to have it bring its true value; but Cushman, on the contrary, persisted in adhering to his bid, and subsequently obtained a confirmation of the sale and a conveyance of the title."

The Supreme Court clearly indicated that, by the confirmation of the sale to Cushman and its conveyance to him, the property thus conveyed was thus impressed with a trust for the benefit of all the bondholders. Such seems to us to be the situation in which the property conveyed to the Indiana, Illinois & Iowa Railroad Company, stood upon the making of the conveyance to it by Cushman.

In this connection, the circular letter issued by Cushman after the making of his bid at said master's sale, is important as showing how the situation was presented to the various bondholders, and how they had a right to regard it. This letter is dated Chicago, March 27, 1878, and contains, among other things, the following:

"The sale was made on the 12th day of June, 1877, and the property, rights and franchises were bid in by me for the bondholders whom I represented, for the sum of $4,000. The sale has never been confirmed, because the money was not in my hands to pay the costs and perfect it. Unless the sale is confirmed very soon, it will be set aside and a large additional expense thereby be thrown upon the bondholders."

At that time no sale had been made. The report of the master was not of a sale, but that, the property having been offered for sale, the highest bid he had received was the sum of $4,000, offered by Cushman, as trustee for bondholders. This bid had been made in pursuance of an agreement made by Cushman with Barnes, acting in behalf of all the bondholders, that the property should be bid off for the use and benefit of all the bondholders; and this circular

letter by Cushman informed the bondholders that the sale had not been confirmed, and that, unless confirmed very soon, it would be set aside. More than three years elapsed without it having been confirmed; each and all of the bondholders had, therefore, a right to believe that the sale would either not be confirmed, or, if confirmed, the confirmation would be for the benefit of each and all of them.

We are therefore of the opinion that, under the arrangement made by Cushman with Barnes for all of the bondholders, the bid made by him and the report thereof made by the master, and the confirmation of the sale and the deed years after such sale; the property conveyed to Cushman was received by him in trust for all the bondholders, and that the mere fact that some of the petitioners to this proceeding received back from Cushman, bonds which they had delivered to him, and that he returned to them money they had paid in, and received from them receipts releasing him from any obligations to them, was not sufficient to discharge the property from the trust imposed upon it by the foreclosure proceedings and the sale had thereunder, and that the Indiana, Illinois & Iowa Railroad Company having received such property with notice of the trust, must respond to petitioners for the value of their liens upon it, the rights of Dore, Hooker and Strong, respectively, as set forth in their respective petition, being based, as we think they are, not so much upon the fact of their having paid assessments or calls had under the contemplated plan of reorganization, as upon the nature of the circumstances under which the sale and conveyance was made to Cushman. We regard the case made by Dore and Strong, respectively, as similar to the case made by the executors of Swannell, that the court could properly consider and dispose of them in one proceeding. Story's Eq. Pleading, Secs. 97, 111, 126, 129, 129a, 271; Pomeroy's Eq. Juris., Secs. 115–269; Henderson v. Cummings, 44 Ill. 325.

The decree of the Circuit Court is therefore reversed, with directions to enter a decree in favor of Samuel W. Strong, against the Indiana, Illinois & Iowa Railroad Company for

thirty-three cents on the dollar of the par value of three bonds of $1,000 each, less the sum of $12, being for the sum of $978, with interest thereon at five per cent per annum from the 21st day of October, 1891; and to enter a decree in favor of Henry M. Hooker against the Indiana, Illinois & Iowa Railroad Company for thirty-three cents on the dollar of the par value of twenty-five bonds of $1,000 each, less the sum of $225, with interest at five per cent per annum, being for the sum of $8,025, with interest thereon at five per cent per annum, from the 21st day of October, 1891.

And the decrees, respectively, in favor of the executors of Swannell and that in favor of Patrick Dore, are reversed, with directions to render decrees in favor of said executors and said Dore, respectively, for the principal amount severally found for said executors, and for the amount severally found for said Dore, with interest thereon in each case at the rate of five per cent per annum from the 21st day of October, 1891, instead of the rate of six per cent per annum, as directed by the decree of the Circuit Court. Reversed and remanded with directions.

The clerk of the court will tax against the Indiana, Illinois & Iowa Railroad Company one-half of the costs of these appeals, and will tax against the executors of Swannell and against Patrick Dore the other half of the costs of these appeals; as between the executors of Swannell and said Dore, the clerk will tax against each, such proportion of one-half of the entire costs as the amount of their respective interests bear to each other, viz., against said executors five nineteenths of said half and against said Dore fourteen nineteenths of said half.